(No. 33881.—

JULES GRAVELOT, Appellee, *vs.* JOSEPH SKENDER,
Appellant.

*Opinion filed June 15, 1956.*

16

HECTOR A. BROUILLET, and ALLEN H. MEYER, both of Chicago, for appellant.

WILLIAM C. WINES, of Chicago, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Joseph Skender, appeals from a decree of the superior court of Cook County which ordered him

to perform his contract to sell real estate to the plaintiff, Jules Gravelot. A freehold is involved.

The contract was executed on April 23, 1946. Defendant agreed to sell, and plaintiff agreed to buy for $44,000, a three-story brick building containing 11 stores and 40 apartments located at the intersection of Archer Avenue and 33rd Street, in Chicago. The contract provided that defendant was to convey the property to plaintiff or his nominee by warranty deed, subject only to existing leases and the usual stock objections of the title company. Defendant agreed to deliver to plaintiff within 45 days from the date of the contract an opinion of title, showing good title in the seller, subject to the foregoing exceptions. Plaintiff paid $1000 earnest money to defendant upon the execution of the contract and agreed to pay $11,000 on or before July 1, 1946, and to execute a mortgage for the balance of $32,000. The contract referred to defendant and his wife, Frances, as sellers, but the attorneys for the parties deleted her name from the contract, which was signed only by plaintiff and defendant.

An opinion of title showed as objections to defendant's title delinquent taxes for the years 1928 through 1939, two delinquent special assessment installments, and a trust deed in the amount of $15,000. Defendant's attorney testified, "I told Mr. Skender under the contract he would have to clear up the title and pay the taxes, and he said he couldn't do it." It is now admitted in this court that defendant had it within his power to cancel the trust deed, although defendant testified to the contrary. As to the taxes, defendant had previously given an attorney a check for $7300 to buy the property at a tax foreclosure sale. The check was paid to the county collector but for some reason not disclosed in this record the taxes still appeared as objections. In any event, defendant did not clear the title prior to the closing date.

On June 27, 1946, plaintiff's attorney wrote a letter to

defendant's attorney stating that plaintiff was ready to deposit the $11,000 cash balance on the contract and to have executed a part purchase money mortgage for $32,000, and that he would like to complete the matter on June 28. On the next day plaintiff's attorney again wrote to defendant's attorney. With this letter he enclosed a deed in trust from defendant and his wife to Liberty National Bank, as trustee. He stated in his letter that his client was having title conveyed to the bank, as trustee, and that "a part purchase money mortgage is now being prepared for the Bank to sign." On July 1, 1946, plaintiff's attorney was on vacation but plaintiff went to the office of defendant's attorney and informed him that he was prepared to close the transaction forthwith. Plaintiff and defendant's attorney agreed, however, to continue the matter for ten days to await the return of plaintiff's attorney.

On July 10, 1946, plaintiff, defendant and their attorneys met at the offices of defendant's attorney. At this meeting plaintiff tendered two checks, totaling $11,000, payable to Chicago Title and Trust Company, and also tendered a mortgage for $32,000 executed by the Liberty National Bank, as trustee. According to plaintiff's testimony, nothing was said about the form of these checks and the mortgage at the meeting. Plaintiff also testified that at this meeting defendant stated he was not going through with the deal. Defendant's attorney testified that he told plaintiff and his attorney at the meeting that defendant could not remove the tax and trust deed objections set forth in the letter of opinion; that because these objections could not be satisfied defendant offered to return the $1000 paid by plaintiff, and that plaintiff refused to accept the return of the money.

Defendant's principal contention is that the purchaser was in default under the contract and so was not entitled to specific performance. This contention is based upon two grounds: first, upon repeated assertions that the evidence

discloses that defendant knew that plaintiff was unable to raise the balance of the contract price, and second, upon admitted irregularities in the form of the checks and mortgage tendered on July 10, 1946. So far as plaintiff's ability to perform his part of the bargain is concerned, the point appears to have been waived by defendant's failure to raise it before the master and chancellor. Moreover it is completely without support in the record. There is no testimony to the effect that plaintiff was financially unable to perform. Neither defendant nor his then attorney in their testimony expressed any doubt as to plaintiff's capacity to perform.

The matter of the form of the checks and mortgage tendered by the plaintiff, however, requires consideration. The contract called for the payment of $11,000 in cash and a "part purchase money mortgage executed by the purchaser." The purchaser tendered $11,000 in checks payable to the Chicago Title and Trust Company, and a mortgage for $32,000 executed by the Liberty National Bank, as trustee. The tender thus made did not comply with the terms of the contract, and defendant urges that for this reason plaintiff is not entitled to specific performance.

The contention is unsound. From undisputed testimony it appears that two days before the July 1 closing date, defendant's attorney was informed that plaintiff proposed to take title in a bank, as trustee, and that he would offer, at the closing, a mortgage signed by the bank as trustee. Neither defendant nor his attorney objected to these proposals before July 1. Indeed, there is no testimony even suggesting that defendant or his attorney made any objection to the form of the checks and mortgage when they were presented at the meeting on July 10. Defendant's attorney testified instead that he "told them Joe Skender could not pay the taxes, the amount due there, and the mortgage I knew was involved. I don't remember in what manner now, but it was so involved it couldn't be straight-

ened out." Failure to complete the sale on July 10 was not due to defects in plaintiff's tender, but rather to defendant's unwillingness or inability to perform. If timely objection had been made, the deficiencies now relied upon could readily have been cured. Cf. *Thompson* v. *Crains,* 294 Ill. 270; 1 Restatement of Law of Contracts, sec. 305; Williston on Contracts, sec. 1819.

Defendant argues that he was relieved of the obligation to tender a deed or to clear up the title because prior to July 1, 1946, the plaintiff made a tender which was inconsistent with the terms of the contract. But as has been pointed out, the defendant waived any defect in the form of the checks and mortgage by failing to object. He was not relieved of the burden of performing his obligations under the contract.

Defendant also maintains that plaintiff failed to elect to take whatever interest the defendant could convey, and therefore is not entitled to specific performance. *White* v. *Lang,* 401 Ill. 219, and *Mitchell* v. *White,* 295 Ill. 135, upon which the defendant relies, involved factual situations far removed from that here presented. In *White* v. *Lang* the purchaser had expressly refused to accept a deed conveying the seller's interest in the property, and in *Mitchell* v. *White* the purchaser failed to comply with a provision in the contract which required him to give notice of his willingness to take the title as it stood within a specified time. Here the record shows that at the meeting on July 10, plaintiff desired to perform the contract in accordance with its terms. In view of defendant's positive refusal to carry out his part of the bargain there was no occasion for plaintiff to state any election at that time. The present action, filed 72 days after that meeting, proclaimed plaintiff's election to take whatever title defendant could convey, subject to appropriate deductions for title defects. That election was timely. Cf. *Cities Service Oil Co.* v. *Viering,* 404 Ill. 538; *Rost* v. *Kremin,* 308 Ill. 79.

Nor does the record support defendant's claim that specific performance of the contract in this case would be unconscionable. This claim rests upon the assertion that defendant, a man of limited education, was overreached by plaintiff, who is a real estate man. Defendant was represented by an attorney. His present counsel directs attention to the fact that the name of one of his attorneys was stricken from the rolls of this court in 1946. But there is no suggestion that defendant was not adequately represented throughout. (Cf. *Spina* v. *Spina,* 372 Ill. 50; *Shulman* v. *Moser,* 284 Ill. 134.) Defendant also pictures huge profits which plaintiff will allegedly gain as a result of the decree of specific performance. Much of this alleged profit is without a basis in the record; much of it occurs as a result of the increase generally in real estate values since 1946, a fact which has no bearing upon plaintiff's right to specific performance. (See, *Cities Service Oil Co.* v. *Viering,* 404 Ill. 538; *Keogh* v. *Peck,* 316 Ill. 318; *Anderson* v. *Anderson,* 251 Ill. 415.) The gross delay in disposition of the case does not appear to be attributable to the plaintiff. A decree awarding plaintiff specific performance was entered on January 7, 1953, but it was vacated on defendant's motion and the matter was tried anew.

Finally defendant urges that the decree is defective in three particulars; in determining the period of the accounting; in failing to allow a right of homestead; and in purporting to alter the present legal ownership of the property. Plaintiff concedes that the decree erroneously directed an accounting from July 1, 1946, instead of July 10, 1946. Defendant at no time claimed a right of homestead for himself or his wife before the master or the chancellor. The claim now raised comes too late. (*Angelo* v. *Aldridge,* 164 Ill. 388.) As to the third point, a one-half interest in the property was conveyed to defendant's wife after plaintiff brought the present action. Her interest in the property was taken subject to the rights of the parties in the pending

litigation. *Norris* v. *Ile,* 152 Ill. 190; cf. *Heckmann* v. *Detlaff,* 283 Ill. 505.

The decree of the superior court of Cook County is modified by changing the date for commencing the period of the accounting from July 1, 1946, to July 10, 1946. In all other respects the decree is affirmed.

*Decree modified and affirmed.*