DELORES A. COMSTOCK, Plaintiff and Counterdefendant-Appellant, *v.* EARNEST W. COMSTOCK, Defendant and Counterplaintiff-Appellee.

Third District   No. 77-188

Opinion filed December 12, 1977.

James J. Mesich, of Walker, Gende, Hatcher, Berz & Giamanco, of Moline, for appellant.

James N. De Wulf, of Moline, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Plaintiff Delores Comstock appeals from a decree of the Circuit Court of Rock Island County following an action for divorce and a counterclaim for divorce as between the plaintiff and defendant, Earnest W. Comstock. While plaintiff Delores Comstock commenced the proceeding for divorce, the defendant filed a counterclaim for divorce and, following a dismissal of plaintiff's complaint, the divorce was granted to defendant without a contest on his counterclaim.

After a contested hearing on child support, alimony and property distribution, the trial court granted custody of the parties' child to plaintiff, awarded $40 per week child support to plaintiff, decreed that defendant should have, as his own separate property, certain real estate which had been held as joint tenants, denied plaintiff's claim for alimony, and ordered defendant to pay certain outstanding debts of the parties, and likewise ordered defendant to pay plaintiff's attorney's fees plus costs.

On appeal in this court, plaintiff contends that (1) the trial court erred in ordering the jointly held real estate transferred to the defendant, and (2) the trial court erred in denying alimony to plaintiff.

As noted in the record, the parties were married on May 4, 1964, and lived together as husband and wife until August 1976. One daughter, currently aged 12, was born of the marriage of the parties. On September 10, 1976, plaintiff filed her complaint for divorce, and defendant counterclaimed for divorce on November 3, 1976. The countercomplaint alleged that certain real property "should become the separate property of the defendant-counterplaintiff * * *," and also contained a count seeking partition of the real estate. Plaintiff dismissed her complaint on February 4, 1977, and, as we have noted, a divorce was granted to defendant on his counterclaim on the ground of mental cruelty.

The cause then proceeded to a contested hearing on child custody, child support, alimony, property settlement and allocation of responsibility for outstanding obligations and any other remaining problems as between the parties. The evidence at the hearing established that defendant had acquired certain real estate, improved with a residence, as a result of a prior divorce from another party. Plaintiff and defendant had resided at the property during their marriage. Approximately three to five years prior to the hearing, title to the property was transferred to plaintiff and defendant as joint tenants. Plaintiff testified that she recalled some discussion that her name "be put on the deed to the property," that the property was placed in both their names so that it would be one-half hers, and that she did not recall requesting that the property be put in both their names. Plaintiff indicated that defendant's ex-wife's name may still have been "on the deed" and that defendant had wanted to change the property over to include plaintiff in the title. Defendant testified that the property had been transferred at plaintiff's urging.

Additional testimony indicated that during the marriage, defendant had made various improvements to the house, including the installation of a new bathroom, repair on the heating unit, paneling, electrical work, and other work. Defendant testified that the purchase price of the house had been $13,200 and that the present balance on the real estate mortgage was $9,731.68. He also testified that the current market value of the property was between $24,000 and $26,000.

The evidence disclosed that defendant is employed as an electrician, and grossed $19,332 in 1975 and expected to gross between $18,000 and $19,000 in 1976. Defendant had been steadily employed during the marriage, and had normally put his entire paycheck into the parties joint checking account. During the course of the marriage, plaintiff had operated beauty parlors at five different locations and defendant had done all the work in preparing each location. Plaintiff's beauty shop

operated at losses of $2,618, $2,464, and $1,656 for the respective years 1973, 1974, and 1975. The shop, however, had grossed $2,937 for the most recent five months, with expenses of $1,689.75, leaving a net profit of $1,247.25 for that period. Plaintiff works four days per week at the beauty shop.

Defendant testified that there was due on two loans to a credit union the sums of $2,988.77 and $965.85. It also was noted that the parties had on occasion borrowed money from the credit union to support plaintiff's beauty shop, but the last such loan had been about four years prior to the hearing. Other obligations included $1,090.30 to a bank on a loan secured by a Blazer automobile, and the outstanding mortgage on the real estate. Defendant testified that he owed $1,028 to Tri-City Motorcycle Shop, $275 to a friend, $173 to his sister, and $150 to a previously employed attorney. It was also noted that after plaintiff had moved out of the residence occupied by the parties, defendant had sold most of the household items to satisfy debts totaling approximately $5,000.

Following a hearing, the trial court granted custody of the child to the plaintiff and ordered defendant to pay $40 per week child support. Plaintiff was awarded the Blazer automobile, her beauty shop personal property, and any other personal property in her possession. The trial court decreed that the real estate should be the separate property of defendant. In addition to the real estate, defendant was awarded a motorcycle, a pickup truck and other personal property. Defendant was ordered to pay all the outstanding liabilities of the parties, and to pay plaintiff's attorney's fees of $1,000 and costs of $321.34.

Plaintiff first argues, on appeal, that the trial court erred in ordering the jointly held real estate transferred by plaintiff to the sole ownership of defendant. Under section 17 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 18) it is provided:

> "Whenever a divorce is granted, if it shall appear to the court that either party holds the title to property equitably belonging to the other, the court may compel conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable."

The Illinois Supreme Court, in referring to the provision for conveyance to the party entitled to the same, stated in *Baker v. Baker* (1952), 412 Ill. 511, 514-15, 107 N.E.2d 711:

> "The mere circumstance that a husband purchased the property placed in joint tenancy with his wife does not make him the equitable owner of her interest. Property voluntarily conveyed by a husband to his wife, without fraud or coercion is presumed to be a gift, notwithstanding the fact the husband purchased the property with his own money, and the wife may hold the property against him. [Citations.] This presumption of fact is not conclusive

but may be rebutted by proof. It can only be overcome by clear, convincing, and unmistakable evidence that no gift was intended. [Citations.] It is often said the presumption of gift is not to be frittered away by mere refinement."

■■ ■ In the instant case, it is clear that defendant held title to the property in question prior to his marriage to plaintiff, and that during the marriage to plaintiff defendant caused the title to the property to be transferred to plaintiff and defendant in joint tenancy. When defendant placed the property in joint tenancy with plaintiff, the presumption of gift arose. We do not find from the record sufficient evidence of absence of an intention to make a gift by such transfer which would enable us to support the order of the trial court directing conveyance of the interest of plaintiff to defendant as the equitable owner of the property concluding plaintiff's joint interest.

■■ Defendant has argued on appeal, also, that he has a homestead interest in the property by virtue of plaintiff's having abandoned the premises prior to the divorce. Defendant's argument is based on "An Act to exempt the homestead from forced sale * * *" (Ill. Rev. Stat. 1975, ch. 52, par. 1 et seq.). With respect to a similar argument, this court stated in *Gottemoller v. Gottemoller* (3d Dist. 1976), 37 Ill. App. 3d 689, 693, 346 N.E.2d 393:

> "The [homestead] exemption which we have been discussing is actually created as a protection against third-party creditors, and is not an interest to be recognized as between joint tenants or tenants in common (Ill. Rev. Stat. 1973, ch. 52, §1). We, therefore, tend to question whether the homestead estate or exemption is even a cognizable interest to be bandied about between husband and wife, when they are equal owners of the property."

Defendant also argues that the transfer of the property to the joint tenancy as between the parties, constituted a resulting trust. As outlined, however, in *Ludwig v. Ludwig* (1952), 413 Ill. 44, 51, 107 N.E.2d 848:

> "In cases involving the establishment of resulting trusts where property is purchased and paid for by a husband but title is taken in the name of the wife, or in joint tenancy, the courts have stated that a resulting trust is not shown to exist unless it is established that it was not intended that the wife should take a beneficial interest, because under such circumstances there is a presumption that the property was transferred to the wife as a gift."

■■ We note in the instant case that the property had been treated as common property as were all other articles owned or held by the parties and that payments were made on the mortgage on the property during their marriage. The record made in the trial court did not sufficiently establish the lack of intent for plaintiff to take a beneficial interest in the

property which would permit the imposition of a resulting trust in this case. As noted in the *Ludwig* case, it must be clearly established that it was not intended that the wife should take a beneficial interest before a resulting trust could exist, in view of the presumption that the property was transferred to the wife as a gift.

■■ Defendant also apparently argues that there exist special equities, such as defendant's work in improving the real estate and plaintiff's beauty shop operation as a drain on the families finances, which support the trial court's order that the real estate be the separate property of defendant. As noted by the supreme court of this State in *Everett v. Everett* (1962), 25 Ill. 2d 342, 346, 185 N.E.2d 201:

> "To justify a conveyance or transfer under section 17 [of the Divorce Act], however, special circumstances and equities must be alleged and established by the evidence."

(See also *Crenshaw v. Crenshaw* (1st Dist. 1977), 45 Ill. App. 3d 880, 360 N.E.2d 576.) In the instant case, while defendant's counterclaim alleged that the real estate "should become the separate property of defendant" it did not specifically allege the existence of any special circumstances and equities entitling defendant to such relief nor did the record establish such special circumstances or equities which would entitle defendant to the relief prayed for. As a consequence, we conclude that it was erroneous for the trial court to order transfer of plaintiff's joint interest in the real estate to defendant.

■■ Another issue raised by plaintiff on appeal in this court is to the effect that the trial court erred in refusing to grant alimony to the plaintiff. As this court has indicated in *Pohren v. Pohren* (3d Dist. 1973), 13 Ill. App. 3d 380, 384, 300 N.E.2d 288:

> "Our Statute (Ill. Rev. Stat. 1971, ch. 40, par. 19) provides that when a divorce is decreed, the court may make such order touching the alimony and maintenance of wife or husband as from the circumstances of the parties and the nature of the case shall be fit, reasonable and just."

We pointed out in the *Pohren* case that the statute does not refer to and does not make an award dependent on the question of fault; that the court is thereby empowered to award alimony to a wife against whom a divorce is granted. We pointed out, however, that this does not mean that she has a right to it in every case or that it should be granted as a matter of course. The trial court has a discretion, the exercise of which depends on all facts in the particular case and should not be exercised arbitrarily. The objective in the exercise of such right is to prevent imposition of an unjustifiable hardship, in a given case, that would ensue. The court gives consideration under such circumstances to the age, health and physical condition of the parties in determining whether to award alimony to a

wife against whom a decree for divorce has been entered. One of the factors for consideration is the length of time the parties have lived together and the interest of society in preventing a woman from becoming a public charge. We see nothing in the denial of alimony by the trial court in the instant case which was contrary to the precedents or to the record made in the cause before us. We note that defendant also contributed monetarily and otherwise to plaintiff's beauty shop operation. Under the circumstances shown by the record in this case, we conclude that the trial court did not abuse its discretion by denying plaintiff's request for alimony.

We should here observe that this cause is being determined under the law as it existed prior to the recent amendment relating to divorce (described as the Marriage and Dissolution of Marriage Act, which became effective October 1, 1977).

For the reasons stated, the judgment of the Circuit Court of Rock Island County is reversed only insofar as it orders transfer of the interest vested in plaintiff to the jointly held real estate of the parties so as to vest separate ownership of such real estate in defendant. The decree of the Circuit Court of Rock Island County is otherwise affirmed. This cause is, therefore, remanded only for the purpose of vacating the portion of the decree which directs transfer of the interest of plaintiff in the real estate held jointly by the plaintiff and defendant herein.

Affirmed in part and reversed in part with directions.

BARRY and SCOTT, JJ., concur.